AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
## District of New Mexico

| | | |
|---|---|---|
| United States of America<br>v.<br>JUANITA WILLIAMS<br><br>*Defendant(s)* | ) ) ) ) ) ) ) | Case No.  16mj1008 |

**FILED UNITED STATES DISTRICT COURT ALBUQUERQUE, NEW MEXICO**
**MAR 15 2016**
**MATTHEW J. DYKMAN**
**CLERK**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __09/02/2015 - 09/12/2015__ in the county of __Bernalillo__ in the District of __New Mexico__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. Sec. 1591(a)(1) | Sex trafficking of children or by force, fraud, or coercion |
| 18 U.S.C. Sec 1591(e)(2)(B) | any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person. |

This criminal complaint is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

_____
Complainant's signature

Ross Zuercher, Special Agent - FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __03/15/2016__

_____
Judge's signature

Kirtan Khalsa U.S. Magistrate Judge
*Printed name and title*

City and state: __Albuquerque, New Mexico__

## AFFIDAVIT

Your Affiant, Ross Zuercher, having been duly sworn, does hereby depose and say:

## INTRODUCTION

1. I have been a Special Agent (SA) of the Federal Bureau of Investigation (FBI), United States Department of Justice, since August 2012. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request arrest warrants. I am currently assigned to the FBI's Albuquerque Violent Crime Program, as such, I am authorized to investigate crimes against children. The information set forth in this affidavit was derived from my own investigation and/or communicated to me by other sworn law enforcement officers of the FBI and the Bernalillo County Sheriff's Office. Because this affidavit is submitted for the limited purpose of securing an arrest warrant, your Affiant has not included each and every fact known to me concerning this investigation. Your Affiant has set forth only those facts that your Affiant believes are necessary to establish that probable cause to support a criminal complaint against JUANITA WILLIAMS in violation of Title 18 U.S.C. §§ 1591(a)(1) and (e)(2)(B).

## RELEVANT STATUTES

2. This investigation concerns alleged violations of certain activities relating to crimes against children; Title 18 U.S.C. §§ 1591(a)(1) and (e)(2)(B).

    a. 18 U.S.C. § 1591(a)(1) makes it a federal crime for any person who knowingly, in or affecting interstate or foreign commerce, recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person knowing, or, except where the act constitutes advertising, knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion, or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punishment as provided in subsection (b).

    b. 18 U.S.C. § 1591(b) provides that punishment for an offense under subsection (a) is not less than 15 years or for life, if the offense was effected by means of force, threats of force, fraud, or coercion, or any combination of such means, or if the person recruited, enticed, harbored, transported, provided, obtained, advertised, patronized, or solicited had not attained the age of 14. If the offense was not effected by force, fraud, or coercion, and the person had attained the age of 14 but not yet the age of 18, then the punishment is not less than 10 years or for life.

    c. 18 U.S.C. § 1591(e)(2) defines "coercion," in relevant part, as: (A) threats of serious harm to or physical restraint against any person; or (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person.

    d. 18 U.S.C. § 1591(e)(3) defines "commercial sex act" as any sex act, on account of which anything of value is given to or received by any person.

e. 18 U.S.C. § 1591(e)(4) defines "serious harm" as any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity to avoid incurring that harm.

## DETAILS OF THE INVESTIGATION

3. In September of 2014, Bernalillo County Sheriff's Office (BCSO) Detective Kyle Woods initiated an investigation of a missing 12 year old juvenile female named Jane Doe (year of birth 2002). Based on that investigation, it was learned that Jane Doe had been the victim of various sexual offenses during the time she was missing. It was learned that Jane Doe made statements about traveling to California, and displayed behavior on social media consistent with having been trafficked sexually. Jane Doe did not provide enough specifics about the offenders to further investigate the offenses. However, based on Jane Doe's proclivity to run away, the past reports of abuse, the lack of a consistent support system, Jane Doe was determined to be a high-risk victim. As such, Detective Woods attempted to maintain contact with Jane Doe in an effort to continue to build positive rapport with law enforcement, assist Jane Doe in obtaining a support system, and further investigate the potential trafficking offenses.

4. The following sexual exploitation of Jane Doe occurred between the approximate dates of September 2-12, 2015. Jane Doe was approximately 13 years of age during the aforementioned dates.

5. Jane Doe ran away from home on September 2, 2015. Jane Doe contacted Detective Woods on September 12, 2015, stating that she was in California. Jane Doe was taken into state custody in California, and while in a California Safe house, Jane Doe disclosed having been taken to California by a "pimp." Jane Doe stated she was trafficked, via prostitution, in Los Angeles for three days before she paid a customer to take her to Arizona. Jane Doe had not previously acknowledged the presence of a "pimp." However, after an interview where she was confronted with the information about the trafficker, Jane Doe acknowledged his involvement. Numerous interviews were conducted and Cordny Henry was identified as the trafficker. Jane Doe subsequently identified him through a photograph array.

6. A forensic interview was conducted on January 25, 2016. Jane Doe disclosed full details about the time from September 2-12, 2015. Through this interview, a possible female accomplice of Henry's who had been present and involved during the time Jane Doe was trafficked was identified. The female, only known to Jane Doe as "Kandy," was identified as JUANITA WILLIAMS. Jane Doe subsequently identified WILLIAMS through a photograph array on February 1, 2016.

7. During the forensic interview, Jane Doe defined prostitution as, "selling yourself for money." Jane Doe stated he, referring to the "pimp," had told her to call him, "Daddy." Jane Doe stated it was difficult for her to call him a "pimp" or "daddy" because it made her uncomfortable. She stated she knew the "pimp's" middle name or last name to be William. Jane Doe spoke of when Detective Woods showed her the photograph array, and having then

2

RZ KK

notified her of his name. She did not recall the full name.

8. Jane Doe was asked how she first met the "pimp." Jane Doe stated she was having trouble with her family and other issues she was facing. Jane Doe said she did not know how to take care of the situation, and felt at the time that she had to run away from home. Jane Doe stated she was coming home when she met the "pimp." He told her to talk to him, and then gave her his number. She stated he made comments to boost her self esteem. She said they started a text message conversation, during which he asked if she sold her body. She told him, "No," but that she had before. She stated he continued to entice her, and that she waited until her parents fell asleep to sneak out the door and head towards the McDonald's located at Gibson and San Mateo in Albuquerque, New Mexico. She stated the "pimp" picked her up at the McDonald's.

9. Jane Doe stated he had another black woman with him, who was subsequently identified as JUANITA WILLIAMS. Jane Doe stated that WILLIAMS gave her directions on selling herself. WILLIAMS told her to never get in the back of a car, always use condoms, and the prices for services; the minimum for performing oral sex was $40 dollars, sex with a condom was $60-80, sex at the hotel was $100-200. WILLIAMS told Jane Doe that she had to earn $500 dollars per day. WILLIAMS told Jane Doe could not come back into the hotel unless she earned with $500.00. Jane Doe said it was verbalized to her that if she came back with less than $500.00 she would have her "ass beat." Jane Doe stated she worked diligently to always earn $500.00. Jane Doe said WILLIAMS taught her that if the customer locked the door, she was supposed to run away. If the customer followed her because she told them no, she was supposed to call the "pimp" who would place her somewhere else. She stated she had to be quick on her feet because if someone was following her and saw her get into the "pimp's" car, "they" would follow the car.

10. Jane Doe defined different terms commonly used when referring to sex trafficking. Jane Doe referred to the "trap hotel" as where the sexual acts took place. She also referred to the "trick" as customers who paid for sex.

11. Jane Doe said they stayed at hotels in Albuquerque on Gibson by the airport. She stated the trap motel was located on Central. She said the trap hotel was where they met the customers, but did not sleep there. Jane Doe stated she worked in Albuquerque for approximately 1-2 weeks in September 2015.

12. Jane Doe stated she did not remember WILLIAMS' name, but her street name was "Kandy." Jane Doe stated WILLIAMS once locked the "pimp" out of the hotel room. The "pimp" broke the windows of the hotel to gain access to the room. When the "pimp" finally gained access into the hotel room, he took WILLIAMS into the bathroom and physically abused her for 5 minutes. Jane Doe said she was horrified to witness the abuse.

13. She stated another rule was that if they were in the car with the "pimp", they had to lie down so no one else could see them. Specifically, other "pimp" who would target them.

14. During her time with WILLIAMS and the "pimp", they traveled by vehicle to California. Jane Doe stated the vehicle was gold, but did not remember what type exactly. She believed it may have been a gold SUV and that it could have had third-row seating. Jane Doe stated she slept the whole way to California. Jane Doe said the "pimp" had girls everywhere, mostly advertising services online. The "pimp" once suggested leaving Jane Doe and WILLIAMS in California with a car, while he went to Washington. Jane Doe stated they went to Los

Angeles.

15. Jane Doe said that when they arrived in California, the "pimp" bought her clothes with cash. She said they worked for two days straight, and that WILLIAMS had more trouble getting customers in California because she was black. Jane Doe said she had more trouble getting customers in Albuquerque because she was white. In California, Jane Doe stated she would give WILLIAMS extra money so she wouldn't fall behind on her required amount of money because she was afraid the "pimp" would physically abuse her. She stated WILLIAMS was being abused because she was black. Jane Doe stated she was in California for approximately 1-2 weeks before she got tired. She stated she had $80.00 at one point, and decided to ask a customer for a ride to Arizona. She said he kept trying to have sex with her and that he kept trying to touch her in a sexual manner. She stated she told him to pull over so she could get out of the car. She got out and walked to the nearest gas station to ask if there was a bus station in order for her to go home.

16. Jane Doe said that at the end of the night, herself and WILLIAMS would put their money (approximately $1,000-$2,000 per night) in the refrigerator. Jane Doe stated the "pimp" took all the money, and that they did not keep any of it. She said he would buy them what they needed, but controlled all the money. Jane Doe stated he would call them every hour and ask how much money there was, so he would know if any was missing. Jane Doe told investigators she was allowed to smoke marijuana and drink alcohol, but if they did any drugs they would be physically abused and let go. She Jane Doe stated she did have sex with the "pimp" when they were drunk and high.

17. When asked for clarification on having sex with the "pimp" in California, Jane Doe stated the "pimp" used a condom and, "it went in." Jane Doe clarified "it" was, "the penis went into the vagina." Jane Doe stated she was intoxicated. Jane Doe also stated they had sex in Albuquerque at the Bow and Arrow motel. Jane Doe stated WILLIAMS saw them have sex in California, but not in Albuquerque. Jane Doe stated he just pulled her pants down and did it. She said she emotionally blocked out when men touched her sexually. Jane Doe stated the "pimp" had sex with both of them, but did not remember what WILLIAMS did while he had sex with her. Jane Doe stated there was no sexual interaction between her and WILLIAMS.

18. Jane Doe stated she would lie about her age. She told the "pimp" she was 18, and he had asked for her ID, but she would lie about having lost it. Jane Doe stated he never found out she was a different age than 18. Jane Doe stated WILLIAMS knew she was younger than 18, and commented about it. Jane Doe said she insinuated to WILLIAMS that she was younger than 18, but did not overtly tell her.

19. Jane Doe said she worked in Albuquerque off of Central. The "pimp" would drop her and WILLIAMS off on Central by the mountains and they would walk down Central. Jane Doe stated she would communicate with WILLIAMS by calling her every time they would have a customer, and that she would tell WILLIAMS when she was going to the trap hotel with a customer. She said the "pimp" had purchased her and WILLIAMS a touch screen cellular phone.

20. Jane Doe would ask customers if they were cops, and if they said no, they had to prove it by showing their penises or doing something sexual. If caught, they were supposed to say they were doing it by themselves, and if they followed the rule, the "pimp" would bail them out. They were required to check in with him if they had any law enforcement contact.

4

21. Jane Doe said her and WILLIAMS would typically get dropped off around 6am and work until approximately 1pm. She stated they would then work from about 5pm-3am. She stated they would sleep between those time frames. She stated they would get food and extra time off once they got their $500. Jane Doe stated the "pimp" controlled purchasing food as well.

22. Jane Doe stated the days in California were easier to earn the required amount of money. Jane Doe remembered having a line of customers at times in California. Jane Doe did not remember the street names in California, but stated the "pimp" would drop her and WILLIAMS off in California too.

23. Jane Doe stated the worst thing the "pimp" did to her was slap her on her face for making the comment to him that "Pimps are little bastards, and they're pathetic." She stated he would touch her sexually, but did not hit her or do other physical violence towards her. She stated she would shut down emotionally when people touched her sexually.

24. Jane Doe stated WILLIAMS appeared to be in her 20's, but did not know how old the "pimp" was. She stated he had tattoos all over his body, but she could not specifically identify any from memory. Jane Doe was shown a picture of Henry. She identified the picture as "William," referring to the name she thought Detective Woods had told her after she identified him from the photograph array. She was also shown her a picture of the Bow and Arrow hotel which she identified as the Albuquerque "trap house." Jane Doe stated the "pimp" paid for the hotel with cash.

25. Jane Doe was also shown a picture of the hotel in California which she identified as the hotel they stayed at in California. Jane Doe talked about going into the hotel from the back.

26. Jane Doe was asked about any photographs that were taken of her. Jane Doe said she took one of herself in California. Jane Doe stated the "pimp" took pictures of her and posted them online, but she did not know what site. Jane Doe said he posted his phone number because he told her he did. Jane Doe told investigators that the pictures were not on her phone. Jane Doe stated the picture he did take did not show her face. She stated he took a picture of her "gluteus maximus" with just underwear on. Jane Doe stated that was the only picture he took of her. Jane Doe stated that WILLIAMS was posted as a "latino" girl online, meaning a picture of a different girl was used. Jane Doe stated WILLIAMS never posted online. Jane Doe stated $500 dollars would afford the customers more than an hour.

27. Jane Doe stated the "pimp" would check her phone. She also asked him for tattoos, but never got one while with him.

28. On January 28, 2016, Detective Woods reviewed a police report dated on 09/09/2015 involving Cordny Henry. The report was made by a woman who purported to be Henry's mother, saying that she was worried that he had not returned her phone calls. She also said that Henry was traveling with a woman named JUANITA WILLIAMS. A search was conducted on JUANITA WILLIAMS resulting in a Los Angeles incident report dated May 2015 where WILLIAMS stated that Henry forced her into prostitution. A driver's license photograph of WILLIAMS was obtained and shown to Jane Doe who identified WILLIAMS as the black female who accompanied Henry and helped transport Jane Doe to California.

29. On March 14, 2016, an advertisement for escort services was observed on backpage.com. The advertisement was placed in the Albuquerque escort section and displayed photographs resembling WILLIAMS as well as a description that was substantially similar to other

5

RT KK

advertisements for WILLIAMS' services which had been previously identified.

30. Later that day, WILLIAMS was detained in the vicinity of Central and San Mateo and brought to the BCSO main building located at 400 Roma in Albuquerque. After being advised of her rights, WILLIAMS spoke with investigators.

31. WILLIAMS told investigators that she did know Cordny Henry, and that he was an "on again off again" ex-boyfriend of hers. She stated that the police report she made back in May 2015 stating that Henry forced her into prostitution was a lie and that she told law enforcement that she lied to them. WILLIAMS acknowledged that she may have had an argument with Henry but did not want to divulge information regarding that incident. WILLIAMS denied any physical abuse by Henry.

32. WILLIAMS was shown a photograph of Jane Doe and identified her as a female that she met while she was working as a prostitute in Albuquerque. WILLIAMS denied any involvement with the sexual trafficking of Jane Doe, but did say that she assisted Jane Doe with the "rules of the game," meaning that WILLIAMS taught Jane Doe how to prostitute while she was working in Albuquerque. WILLIAMS told investigators that both she and Jane Doe worked on Central together. WILLIAMS also admitted to telling Jane Doe how much she could charge for various sexual services. WILLIAMS denied telling Jane Doe that she would "get her ass beat" if she did not bring in $500 each time she returned.

33. WILLIAMS stated that any business relationship between Henry and Jane Doe was their business and that WILLIAMS was not around when Henry first met Jane Doe. WILLIAMS did say that she allowed Jane Doe to stay with her in her hotel room when Jane Doe told her that she had no place to go. WILLIAMS also told investigators that she remembered a trip where she, Jane Doe, and Henry traveled from Albuquerque, New Mexico to California via car. WILLIAMS remembered that Jane Doe also engaged in prostitution while in California, but did not stick around for long.

## FEDERAL JURISDICTION

34. The language of 18 United States Code Section 1591 sets forth that interstate or foreign commerce must be affected. Jane Doe was transported from Albuquerque, New Mexico across state lines to California by WILLIAMS and the "pimp," thus satisfying the interstate nexus requirement.

## CONCLUSION

35. Based on all of the above information, your Affiant submits there is probable cause to believe that JUANITA WILLIAMS, violated 18 U.S.C. §§ 1591(a)(1) and (e)(2). Your Affiant requests an arrest warrant based upon the criminal complaint in this matter.

36. Assistant United States Attorney Sarah Mease has authorized federal prosecution in this matter.

37. I swear that this information is true and correct to the best of my knowledge.

6

Ross Zuercher, Special Agent - FBI

SUBSCRIBED and SWORN to before me this 15th day of March, 2016.

_____
United States Magistrate Judge

7

KK
RZ